**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J & J Sports Productions Inc., | CV 11-02224-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Jose Diaz, individually and dba Tacos Y Mariscos El Kora; Tacos Y Mariscos El Kora LLC, | |
| Defendants. | |

The court has before it plaintiff's motion for default judgment (doc. 14). When considering a motion for default judgment we take a complaint's well-pled allegations of liability as true. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Plaintiff was granted the exclusive nationwide television distribution rights to the "'Firepower': Manny Pacquaio v. Miguel Cotto, WBO Welterweight Championship Fight Program" ("the Program"), which aired on November 14, 2009. Tacos Y Mariscos El Kora ("Tacos Y Mariscos") is a restaurant located in Phoenix, Arizona. On November 14, 2009, the restaurant was displaying the Program on a number of television screens.[1] Although the

---

[1] An affidavit of an investigator who visited Tacos Y Mariscos on November 14, 2009 contains conflicting information concerning the number of televisions. The investigator states that he "observed four (6) televisions located inside" the restaurant. Mot., ex. 3 at 2. He describes the locations and characteristics of five televisions: "2 - 20" flat screen sets,"

1 total capacity of Tacos Y Mariscos is seventy-five to eighty people, on that day three separate 2 head counts revealed that at least 150 patrons were present. Tacos Y Mariscos did not obtain 3 a license from plaintiff to broadcast the Program, and did not require patrons to pay a cover 4 charge. Plaintiff filed this action in November 2011 seeking relief under three counts: (1) 5 violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) conversion. Entry of 6 default was entered by the Clerk against defendants on January 26, 2012 (doc. 13). 7 Defendants have not moved to set aside default and have not otherwise appeared.

8 To establish a violation of 47 U.S.C. § 605, plaintiff must show (1) defendants 9 intercepted and (2) "divulged or published. . . a communication transmitted by" plaintiff. 10 Nat'l Subscription Television v. S & H TV, 644 F.2d 820, 826 (9th Cir. 1981). Section 605 11 applies to satellite television signals. DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 12 2008). Under the statute, plaintiff can recover statutory damages "in a sum of not less than 13 $1,000 or more than $10,000" for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). 14 Additionally, if the court "finds that the violation was committed willfully and for purposes 15 of direct or indirect commercial advantage or private financial gain," it may exercise 16 discretion and increase the damages award by up to $100,000 per violation. Id. § 17 605(e)(3)(C)(ii). By defaulting, defendants admit that they published the Program to their 18 patrons without obtaining a license from plaintiff in violation of 47 U.S.C. § 605, and did so 19 "willfully and for purposes of direct or indirect commercial advantage or private financial 20 gain." Compl. at ¶ 12 (doc. 1).[2] See Combs, 285 F.3d at 906.

21 Plaintiff asks that we award the maximum in statutory damages under § 605 and 22 increase the award by the maximum amount, for a total award of $110,000. Defendants 23 showed the Program on multiple televisions in a restaurant located in an urban setting that

---

a "32" regular television," a "third 20" flat screen," and "a large 42" flat screen." Id.

[2] Plaintiff's complaint also sought relief pursuant to 47 U.S.C. § 553. Plaintiff states that it cannot determine what type of signal transmission defendants used, and asks for recovery under § 605.

- 2 -

1   was packed to approximately twice its capacity. Defendants showed the program without
2   permission willfully and for commercial gain. Based on these facts, we agree that plaintiff
3   is entitled to the maximum statutory damages award of $10,000.

4         The evidence does not support, however, enhancing the damage award by the
5   maximum permitted. Here, there is no evidence of repeated violations by defendants, no
6   evidence that defendants advertised the Program to draw additional crowds, and no evidence
7   that defendants charged extra for food and drinks. Defendants did not charge a cover for
8   entry. See Kingvision Pay-Per-View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1185 (D.
9   Colo. 2008) (discussing these factors as reducing the size of an enhanced damages award).
10  However, we are mindful of the deterrent effect that a substantial award can have on
11  preventing future violations. We find based on the facts of this case that an enhanced
12  damages award of $20,000 is reasonable. The total damages award of $30,000 will not only
13  compensate plaintiff, but is substantial enough to deter future violations.

14        Plaintiff also asks for an award of $2,200 for conversion. Under Arizona law, "the
15  measure of conversion damages includes not only the value of the property taken, but also
16  other damage suffered because of the wrongful detention or deprivation of the property."
17  Collins v. First Fin. Servs., Inc., 168 Ariz. 484, 486, 815 P.2d 411, 413 (Ct. App. 1991). If
18  actual damages are not proven, only an award of nominal damages can be made. SWC
19  Baseline & Crimson Investors, LLC v. Augusta Ranch LP, 228 Ariz. 271, __, 265 P.3d 1070,
20  1092 (Ct. App. 2011). Plaintiff argues that it charges a commercial license fee of $2,200 for
21  businesses the size of Tacos Y Mariscos. It did not, however, include any factual support for
22  this assertion, and it is not pled in the complaint.[3] Accordingly, we award nominal damages
23  in the amount of $1 for the conversion claim.

24        Finally, plaintiff requests an award of its costs and attorneys' fees. Plaintiff may file

---

26      [3] Although plaintiff refers us to plaintiff's affidavit attached as Exhibit 1, see Mot. at
27  14 n.5, we were not provided with a copy of an affidavit from plaintiff. The only affidavits
    attached are from plaintiff's counsel and the investigator. Nether of these affidavits confirm
28  the licensing fee.

1   a bill of costs in accordance with LRCiv 54.1, and a motion for attorneys' fees pursuant to
2   LRCiv 54.2.  We will rule on a motion for attorneys' fees if and when one is before us.
3   **IT IS ORDERED GRANTING** plaintiff's motion for default judgment (doc. 14).
4   Judgment is entered for plaintiff J & J Sports Productions, Inc. and against defendant Jose
5   Diaz, individually and dba Tacos Y Mariscos El Kora, and defendant Tacos Y Mariscos El
6   Kora LLC in the total amount of $30,001.  The Clerk shall enter judgment.
7   DATED this 4th day of April, 2012.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge